The Court has jurisdiction of the parties hereto pursuant to 28 U.S.C. § 1332.

The evidence adduced at trial clearly shows that the various defendants were aware of the impossibility of their performing the various contracted-for services to the plaintiff at the time the promises were made. Such promises to act in the future accompanied by a present intention not to perform clearly state a cause of action for fraud, and for breach of contract. *Dillard v. Earnhart*, 457 S.W.2d 666, 670 (Mo., 1970); *Brennaman v. Andes and Roberts Bros. Const. Co.*, 506 S.W.2d 462 (Mo. Ct.App., 1973).*

Defendants U. C. Leasing and Astrodata, Inc. assert that they cannot be held liable since they are separate corporations. As stated in the findings of fact above, there was evidence adduced at trial which shows that the defendants were merely conduits for each other's operations, and in fact alter egos of each other. The actions of the defendants are in the opinion of the Court, after carefully considering the record, sufficient to pierce the corporate veil and impose liability upon all defendants. *Smith v. City of Lee's Summitt*, 450 S.W.2d 485 (Mo.Ct. App., 1970).

The defendants have also asserted that the plaintiff waived any possible breaches of the contracts between the parties by acquiescing to the continually set-off delivery dates. There was no evidence adduced at trial to indicate that the plaintiff in any way waived its claims for breach of contract or fraud. It is clear that the plaintiff did not discover the defendants'

fraudulent intent until some time in 1973. Accordingly, as stated in the findings of fact, judgment will be entered for the plaintiff in the sum of Fifty Three Thousand Six Hundred and Twenty-Eight Dollars and Thirteen Cents ($53,628.13), the various leases between the parties will be rescinded due to fraud, and the plaintiff shall have judgment against the defendants on all counterclaims.

**Leonard R. SIMONCELLI**

v.

**Casper W. WEINBERGER, Secretary of Health, Education, and Welfare and Pennsylvania Blue Shield.**

**Civ. A. No. 75-512.**

United States District Court, E. D. Pennsylvania.

July 7, 1976.

---

* The Court is aware of the recent holding of the Missouri Court of Appeals for the St. Louis District in *S. P. Personnel Assocs. etc. v. Hospital B. & E. Co.*, 525 S.W.2d 345, 349 (1975) where the holding there was that fraud could not be predicated on a mere promise to act in the future even if not accompanied by a present intention not to perform it. It is the opinion of the Court that the decision of the Court of Appeals is inapposite since the controlling holding of the Missouri Supreme Court in *Dillard*, supra, is not cited.

88

John R. Howland, Philadelphia, Pa., for plaintiff.

Robert E. J. Curran, U. S. Atty., Frank J. Bove, Asst. U. S. Atty., Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the Court is defendants' motion to dismiss the complaint for lack of subject-matter jurisdiction. Defendants are the Secretary of the Department of Health, Education and Welfare ("Secretary") and Pennsylvania Blue Shield ("Blue Shield"), a "carrier" under contract with the Secretary to administer the provisions of Part B of the Medicare program.[1] Plaintiff is a doctor, specializing in internal medicine, who has rendered medical services to many patients participating in the Medicare Part B program.

The underlying facts in this case, construed in the light most favorable to plaintiff, are as follows: During the period from 1969 to 1972, and again briefly in 1974, plaintiff accepted assignments of Medicare claims from his Part B-enrolled patients

---

1. Part B of the Medicare program provides supplementary medical insurance benefits for the aged and disabled and is contained in Title XVIII of the Social Security Act at 42 U.S.C.A. § 1395j et seq. (1974), as amended, (Supp.1976 and Additional Supp. 1, Mar. 1976). Part B pays for physician services, outpatient hospital services, medical transportation, equipment, laboratory services, physical therapy and additional home health care benefits. See 42 U.S.C. § 1395k (Supp. IV, 1974), amending 42 U.S.C. § 1395k (1970). The contract between the Secretary and Blue Shield, sanctioned by 42 U.S.C. § 1395u(a) (Supp. IV, 1974), amending 42 U.S.C. § 1395u(a) (1970), establishes Blue Shield as the duly authorized agent of the Secretary in this geographical location. See 20 CFR § 405.670 (1975).

and submitted these claims to Blue Shield for payment, pursuant to 42 U.S.C. § 1395u(b)(3)(B)(ii) (1970), *as amended*, 42 U.S.C. § 1395u(b)(3)(B)(ii) (Supp. IV, 1974). In August of 1970, plaintiff was informed by Blue Shield that his practice of billing for daily in-hospital medical care for patients who were apparently either extended care or sheltered care patients was under review. The following October, three "sample" claims which had been submitted by plaintiff were referred by Blue Shield to the Pennsylvania Medical Society for "peer review" and an opinion on plaintiff's method of reporting services. The review resulted in an opinion that there was over-utilization of in-hospital services by plaintiff. On the basis of this opinion, Blue Shield devised a payment formula and applied it retroactively to all of plaintiff's claims processed between August 1, 1969, and December 31, 1970.

On January 26, 1972, Blue Shield demanded a refund from plaintiff of previously paid claims in the amount of $13,960.25, based upon the determination of over-utilization. Blue Shield subsequently revised its refund demand to $13,282.40. Thereafter, plaintiff made a timely request for a hearing on three of the cases identified in the claims review. He also reserved the right to request hearings on the remaining cases. The requested hearing was held on November 27, 1973.[2] The decision of the hearing officer, which denied substantially all of the relief requested by plaintiff, was filed on July 19, 1974. By letter dated October 23, 1974, Blue Shield informed plaintiff that, pursuant to the decision of

the hearing officer, its final refund calculation was for $13,162.40.[3] A written request to the Secretary for a hearing to review the decision was denied, by letter dated January 21, 1975, on the ground that the Social Security Act provided no further appeal rights in this situation. This action was commenced one month later.

Blue Shield has withheld payment on plaintiff's assigned claims since June 16, 1971, as a possible set-off for the alleged overpayments. Currently pending in the administrative process are the remaining hearings on the cases in which Blue Shield has determined that there were overpayments, as well as a dispute concerning the validity of applying the payment formula devised by Blue Shield to the withheld assigned claims in order to determine their value. These problems do not currently concern us. This suit simply seeks judicial review of the three cases which have run the course of the administrative process.

Defendants' argument that this Court lacks jurisdiction over the instant case is two-pronged. Their first contention is that there is no right of judicial review with respect to the amount of benefits payable under Part B of Title XVIII of the Social Security Act. They cite in support of that proposition the language of 42 U.S.C. § 1395ff (Supp. IV, 1974), *amending* 42 U.S.C. § 1395ff (1970).[4] The second prong of defendants' argument is that this is an action to which the United States has not consented and, therefore, the action is barred by sovereign immunity. This Court agrees with defendants that there is no right to judicial review of plaintiff's claims

---

**2.** *See* 20 CFR § 405.820 (1972).

**3.** *See* 20 CFR § 405.835 (1972).

**4.** 42 U.S.C. § 1395ff(b)(1) now provides:

Any individual dissatisfied with any determination [by the Secretary] under subsection (a) of this section as to—
(A) whether he meets the conditions of section 426 or 426a of this title, or
(B) whether he is eligible to enroll and has enrolled pursuant to the provisions of part B of this subchapter, or section 1395i–2 of this title or section 1819, or

(C) the amount of benefits under part A of this subchapter (including a determination where such amount is determined to be zero) shall be entitled to a hearing thereon by the Secretary to the same extent as is provided in section 405(b) of this title and to judicial review of the Secretary's final decision after such hearing as is provided in section 405(g) of this title.

Initially, it should be noted that a physician who furnishes items or services to a person enrolled under the supplementary medical insurance plan and who accepts an assignment from the enrollee has the same right as the enrollee to appeal the carrier's determination.

and, thus, we need not reach the sovereign immunity issue.

In addition to 42 U.S.C. § 1395ff(b) (Supp. IV, 1974), which makes no provision for judicial review of denials of reimbursement by a carrier under Part B of the Medicare program, see footnote 4, *supra*, plaintiff alleges two alternative grounds in support of this Court's jurisdiction. One is the general federal question jurisdiction statute, 28 U.S.C. § 1331. The other is Section 10 of the Administrative Procedure Act, 5 U.S.C. §§ 701-706.

■ We preface our discussion of the jurisdiction issue by noting that 42 U.S.C. § 405(h) (1970) is applicable to claims arising under Title XVIII of the Social Security Act. 42 U.S.C. § 1395ii (Supp. IV, 1974). Section 405(h) provides:

> The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 41 [now § 1331 et seq.] of Title 28 to recover on any claim arising under this subchapter.

The Supreme Court has stated that the reach of section 405(h)

> is not limited to decisions of the Secretary on issues of law or fact. Rather, it extends to any "action" seeking "to recover on any [Social Security] claim"—irrespective of whether resort to judicial processes is necessitated by discretionary decisions of the Secretary or by his non-discretionary application of allegedly unconstitutional statutory restrictions. *Weinberger v. Salfi*, 422 U.S. 749, 762, 95 S.Ct. 2457, 2465, 45 L.Ed.2d 522 (1975).

■ It was clearly held in *Salfi* that 42 U.S.C. § 405(h) precludes federal question jurisdiction in an action challenging the denial of claimed benefits. *See Mathews v. Eldridge*, 424 U.S. 319, 327, 96 S.Ct. 893, 899, 47 L.Ed.2d 18 (1976). In light of that holding, and the applicability of Section 405(h) to the instant action, this Court's jurisdiction may not be based upon 28 U.S.C. § 1331.

■ A more substantial reviewability question is raised by the suggestion that we base our jurisdiction in this case upon the Administrative Procedure Act ("APA"). Section 10 of the APA provides for judicial review of agency action except to the extent that "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). A party claiming the applicability of either of these exceptions to the general rule of reviewability bears the "heavy burden" of demonstrating by "clear and convincing evidence" that Congress intended to restrict access to the courts. *Concerned Residents of Buck Hill Falls v. Grant*, 537 F.2d 29, 34 (3d Cir. 1976).

■ In *Weinberger v. Salfi, supra,* the Supreme Court decided that the third sentence of 42 U.S.C. § 405(h) specifically pre-

---

20 CFR § 405.801(a) (1975); *Szekely v. Florida Medical Association*, 517 F.2d 345, 348 (5th Cir. 1975), *cert. denied,* 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976). Prior to the amendment of 42 U.S.C. § 1395ff(b) in October, 1972, the availability of judicial review under § 1395ff for Part B reimbursement claims turned on whether review was sought of a determination as to "entitlement" to *any* payment for the services rendered or, rather, a determination as to the "amount" of benefits payable on a claim. *See Bohlen v. Weinberger,* 483 F.2d 918 (3d Cir. 1973). It is clear that the present version of § 1395ff does not provide for either administrative review by the Secretary or judicial review of any Part B claims for reimbursement, but only sets forth review procedures for determinations on the basic question of the right of an individual to participate, *vel non,* in the Part B Medicare program. *See Bohlen, supra* at 922; Butler, Medicare Appeals Procedures: A Constitutional Analysis, 70 Nw. U.L.Rev. 139, 144, 150–151 & n.113 (1975). This amended version of § 1395ff has been in effect during the entire period in which plaintiff has sought administrative and judicial review of Blue Shield's determination and it is this statutory language by which we measure plaintiff's rights in this action.

cludes judicial review of benefit denials by the Secretary based upon federal question jurisdiction. This Court holds that the more general second sentence of Section 405(h)—"*No* findings of fact or decision of the Secretary shall be reviewed by *any* person, *tribunal,* or governmental agency *except as herein provided*" (emphasis added) —is an express Congressional preclusion of *any* judicial review of decisions by the Secretary denying benefits, unless such review is provided for in the Social Security Act itself.[5]   *Cf. Pollard v. Romney,* 512 F.2d 295, 299 (3d Cir. 1975). This finding of non-reviewability in the absence of any provision in the Social Security Act for judicial review of carrier determinations on Part B

Medicare claims clearly requires the rejection of plaintiff's contention that the APA provides the Court with jurisdiction.

■  Even if we did not believe that 42 U.S.C. § 405(h) precludes non-Social Security Act sources of jurisdiction for judicial review of benefit denials, we would still have to agree with defendants that jurisdiction is lacking here. In this circuit, the APA has not been recognized as an independent source of jurisdiction. *West Penn Power Co. v. Train,* 522 F.2d 302, 310 (3d Cir. 1975), *cert. denied,* —— U.S. ——, 96 S.Ct. 3165, 49 L.Ed.2d —— (1976); *Nixon v. Hampton,* 400 F.Supp. 881, 884–885 (E.D. Pa.1975), *aff'd mem.,* 535 F.2d 1247 (3d Cir. 1976).[6]

**5.** The Supreme Court has reopened this question after apparently having reached the same conclusion. In *Weinberger v. Salfi, supra,* Justice Rehnquist, writing for six members of the Court, stated that the first two sentences of Section 405(h) "prevent review of decisions of the Secretary save as provided in the Act, which provision is made in § 405(g)." 422 U.S. at 757, 95 S.Ct. at 2463 (footnote omitted). Later in the opinion, it was pointed out that the unnamed members of the class in *Salfi* could not satisfy the requirements for jurisdiction under 42 U.S.C. § 405(g). Justice Rehnquist then wrote: "*Other sources of jurisdiction being foreclosed by § 405(h),* the District Court was without jurisdiction over so much of the complaint as concerns the class, and it should have entered an appropriate order of dismissal." *Id.* at 764, 95 S.Ct. at 2466 (emphasis added).

In *Mathews v. Eldridge, supra,* after discussing the jurisdictional issue in the case, Justice Powell, writing for the same six members of the Court, noted:
> Given our conclusion that jurisdiction in the District Court was proper under § 405(g), we find it unnecessary to consider Eldridge's contention that notwithstanding § 405(h) there was jurisdiction over his claim under the mandamus statute, 28 U.S.C. § 1361, or the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* 424 U.S. at 332 n.12, 96 S.Ct. at 901 n.12.

*See Norton v. Mathews,* —— U.S. ——, —— – ——, 96 S.Ct. 2771, 2774, 49 L.Ed.2d ——, —— – —— (1976).

The Supreme Court recently granted a petition for a writ of certiorari in a case which squarely presents the issue and which should result in its resolution. *Sanders v. Weinberger,* 522 F.2d 1167 (7th Cir. 1975), *cert. granted sub*

*nom. Mathews v. Sanders,* —— U.S. ——, 96 S.Ct. 2225, 48 L.Ed.2d 829 (1976).

**6.** The lone exception to this rule of which the Court is aware is also in the Social Security Act area of the law. In *Davis v. Richardson,* 460 F.2d 772 (3d Cir. 1972), the court granted judicial review of an application of administrative res judicata by the Secretary which barred the reopening of an earlier claim. The court "relied, albeit inexplicitly, on the APA as a jurisdictional wedge." *Ortego v. Weinberger,* 516 F.2d 1005, 1010 (5th Cir. 1975). The *Davis* court also held that 42 U.S.C. § 405(h) did not preclude basing jurisdiction for "that type of very limited review" upon the APA. 460 F.2d at 775.

In a post-*Salfi* case, the Third Circuit again confronted this jurisdictional question. The court wrote:
> This panel does not agree with [cases that stand for the proposition that in social security actions the courts do not have jurisdiction to determine if the Secretary correctly applied administrative res judicata,] but believes that the Secretary's action is reviewable as a final order under 42 U.S.C. § 405(g). *Cf. Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). However, since *Davis v. Richardson, supra,* holds that review under Section 10 of the A.P.A. is available, we follow that route rather than referring this case to the court in banc for reconsideration of our earlier interpretations of § 405(g), *see* Third Circuit I.O.P. M(2). *Coulter v. Weinberger,* 527 F.2d 224, 228 (3d Cir. 1975) (footnote omitted).

Setting aside our doubts about the jurisprudential merit ·of such a decisional process, we are not convinced that the *Coulter* panel's acceptance of APA jurisdiction can be squared

Due to the absence of any provision in the Social Security Act for review of carrier determinations on Part B claims and the preclusion of "nonstatutory" review by 42 U.S.C. § 405(h), plaintiff finds himself in a Congressionally-created jurisdictional gap. Whether or not the absence of review is wise from a policy standpoint is not the function of this Court to decide. We simply hold that the statutory language, read in light of the gloss placed on it by recent Supreme Court decisions, provides clear and convincing evidence that judicial review of the carrier's decisions is not available. Accordingly, the complaint must be dismissed.

An appropriate Order will be entered.

with the explicit and implicit signals contained in *Salfi* and *Eldridge* concerning the limitations on reviewability in the Social Security context. *But see Lejeune v. Mathews*, 526 F.2d 950 (5th Cir. 1976). As we previously noted, the uncertainty in this area should be dissipated by the Supreme Court in *Mathews v. Sanders, supra.*

At the present time, this Court does not believe that it should extend this existing, narrow exception to the Third Circuit's general rule that the APA is not jurisdictionally self-executing, particularly in a case that is controlled by 42 U.S.C. § 405(h).